The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag, upon the briefs and argument of counsel and upon Plaintiff's Motion to Hear Additional Evidence or in the Alternative for a New Hearing to Take Additional Evidence. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award insofar as it denied and dismissed Plaintiff's claim for compensation and enters the following Opinion and Order.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Hartford Accident Indemnity Company was the carrier on the risk.
4. The date of plaintiff's alleged contraction of an occupational disease was April 19, 1994.
5. Plaintiff's average weekly wage on April 19, 1994 was $236.55.
6. Plaintiff's medical records were stipulated to by both parties and admitted into evidence.
7. The issue in this case is whether or not plaintiff contracted an occupational disease during her employment with Ithaca Industries.
* * * * * * * * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff is a forty-nine year old female with a tenth grade education. She worked as a sewer at Tom Thumb Glove Company and Golden Needles in North Wilkesboro, North Carolina.
2. From 1990 until April 19, 1994, plaintiff worked as a slitter for defendant-employer. Plaintiff was required as part of her job, to pull knitted pantyhose over a form, using both hands to slit the fabric on two sides and then pull the pantyhose off the form. The work required constant pressure on her wrists. Plaintiff worked eight and nine hour shifts every day and slit approximately 7,000 to 10,000 pieces of fabric while she was working each day. In addition, she lifted heavy boxes of fabric to put them in position for placement on the slitting form.
3. Plaintiff experienced numbness, tingling and stiffness in her right wrist and elbow in March 1993. She requested a transfer for a different job but was not transferred. In March 1994, plaintiff's pain intensified and she began losing her manual dexterity.
4. On April 19, 1994 plaintiff presented to Dr. Douglas L. Metcalf for examination. Plaintiff presented with pressure tenderness over multiple regions of her joints, muscles and tendons. Lab work was conducted which showed that titers of ANA and rheumatoid factor were insignificant. Plaintiff was told to remain out of work.
5. On May 19, 1994, plaintiff presented to Dr. William, R. Griffin, Jr., at the request of defendant-carrier, for a second opinion. Dr. Griffin diagnosed plaintiff with inflammatory condition aggravated by her highly repetitive work. Dr. Griffin ordered nerve conduction and EMG testing and suggested plaintiff take a position with less repetitive motion. Dr. Metcalf referred plaintiff to Dr. G. Frank Crowell to have the nerve conduction and EMG testing.
6. Plaintiff's worker's compensation claim which had been filed was denied prior to her appointment with Dr. Crowell.
7. Dr. Crowell conducted nerve conduction and did the EMG testing and diagnosed plaintiff with bilateral carpal tunnel syndrome.
8. Plaintiff was referred by Dr. Metcalf to Dr. William Brown, Jr. for treatment of her bilateral carpal tunnel syndrome. Dr. Brown diagnosed her condition as not only bilateral carpal tunnel syndrome but bilateral cubital tunnel syndrome.
9. On July 6, 1994, Dr. Brown operated on plaintiff to decompress her right median nerve at the wrist. On August 17, 1994, Dr. Brown performed surgery to decompress her left median nerve at the wrist and to decompress the left ulnar nerve at her elbow. Dr. Brown performed a third surgery on October 3, 1994, decompressing plaintiff's right ulnar nerve at the elbow. Dr. Metcalf restricted plaintiff to a non-repetitive job with only occasional lifting of up to ten pounds. On December 13, 1994, Dr. Brown restricted plaintiff to occasional lifting of not more than ten pounds, breaks every hour and non-repetitive manual activities.
10. A reasonable inference can be drawn from the medical records stipulated into the record that plaintiff's bilateral carpal tunnel syndrome and bilateral cubital tunnel syndrome was in fact caused by her employment with defendant-employer as a slitter.
11. There is insufficient evidence in the record from which to make a finding that plaintiff's employment as a slitter placed her at an increased risk of contracting carpal tunnel syndrome and cubital tunnel syndrome as compared to members of the general public so employed.
12. Plaintiff attempted to return to work unsuccessfully on January 3, 1995. She experienced extreme pain in both her wrists and was not able to finish her shift. Thereafter, she resumed treatment with Dr. Brown. Dr. Brown released plaintiff on January 24, 1995. Dr. Brown gave plaintiff a 15% permanent partial disability of the right hand.
13. Plaintiff has not returned to work with defendant-employer. In March 1995, Ithaca Industries informed her that she would not be able to return to work since she was unable to perform any existing job at Ithaca. Plaintiff is technically still employed by Ithaca but is not currently working or earning any wages and has not worked since April 19, 1994.
14. Plaintiff has applied for jobs at eighteen different supermarkets and drug stores in Wilkes County but has not been able to secure employment. Plaintiff still experiences pain, numbness and stiffness in both wrists and elbows which affects her ability to perform everyday activities.
15. At the conclusion of the hearing in North Wilkesboro on 11 July 1995, Deputy Commissioner Hoag gave the parties 60 days to take medical depositions and the defendants had noticed certain medical depositions. Shortly before the 60 days were up, defendants canceled the noticed depositions. Plaintiff's counsel felt there was not enough time remaining from the 60 days allowed in which to notice and take the depositions that had been noticed by defendants and thus relied solely on the stipulated medical records.
16. Plaintiff attached to his Motion a letter addressed to Dr. Douglas L. Metcalf, MD, one of plaintiff's treating physicians, soliciting his opinion on causation, greater risk and significant causative factor. Dr. Metcalf's answers to these three questions, if admissible, would provide sufficient proof to justify a finding that plaintiff suffered a compensable occupational disease. However, defendant has not had an opportunity to cross examine Dr. Metcalf or to offer evidence in opposition to his proffered evidence.
* * * * * * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's occupational disease of carpal tunnel syndrome was caused by her job with Defendant Employer as a slitter. N.C. Gen. Stat. § 97-53(13) (1991).
2. There is insufficient evidence of record to support a finding that plaintiff's job exposed her to increased risk of contracting carpal tunnel syndrome as compared with members of the public generally. The letter of Dr. Metcalf attached to plaintiff's motion indicates that he will likely supply this missing element, although his letter has not been admitted into evidence in the case. Under the circumstances of this case it would be manifestly unfair to the plaintiff to deny her motion for an opportunity to take additional evidence and it would be unfair to deny defendants an opportunity to rebut evidence adduced by plaintiff. The Workers' Compensation Act requires the Commission to construe the act liberally in favor of the injured worker.Abels v. Renfro Corp., 108 N.C. App. 135, 141, 423 S.E.2d 479,482 (1992).
* * * * * * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of Deputy Commissioner Hoag and enters the following:
ORDER
1. Plaintiff shall have 15 days from the date of this Order to Notice the deposition of Dr. Metcalf.
2. After the Deposition of Dr. Metcalf has been completed, defendants shall have 15 days to Notice the deposition of any rebuttal witness they wish to depose.
3. After completion of the depositions, they shall be forwarded to the Commission forthwith for consideration and decision by the panel who heard the case on 22 January 1997.
4. No costs are assessed at this time.
 S/ _______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER